IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE CONSTITUTION PARTY OF
NEW MEXICO,

    Plaintiff,

v.                                                   Civ. No. 1:12-325 KG/LFG

DIANNA J. DURAN, in her official capacity
as New Mexico Secretary of State,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Dianna J. Duran's Motion to Dismiss (Doc. 29). After having considered the arguments in Defendant's Motion, Plaintiff's Response, (Doc. 34), and Defendant's Reply (Doc. 35), and for the reasons set out below, the Motion to Dismiss is denied.

*A. Background*[1]

The Constitution Party of New Mexico (Plaintiff) is a minor political party in New Mexico. It was founded in 1992 under the name "The United States Taxpayers Party," and is an association of citizens of the United States formed in order to nominate and elect candidates to public elective offices in the United States. Plaintiff has qualified to place its presidential candidates on the New Mexico ballot in the 1992 and 1996 elections. Moreover, during election years 2000, 2004, and 2008, Plaintiff's candidates were on the New Mexico ballot and on between 35 and 40 other state ballots. Plaintiff's candidates have also been elected to state office in Montana and county offices

---

[1] The following factual background comes from Plaintiff's allegations in the Verified Complaint for Injunctive and Declaratory Relief (Verified Complaint). (Doc. 1).

in Nevada.  Plaintiff is one of three minor parties that placed its presidential nominee on ballots in states possessing a majority of electoral votes in 2004 and 2008.

Defendant Dianna J. Duran (Defendant) is the New Mexico Secretary of State and is responsible for administering elections in New Mexico.  One of Defendant's duties is to determine, pursuant to the New Mexico Election Code (the Election Code), whether a minor party is entitled to a place on the ballot.  To qualify as a political party in New Mexico, a minor party must file its organizing and governing rules with Defendant.  NMSA 1978, § 1-7-2(A) (1969).  Minor political parties must also file petitions "containing the hand-printed names, signatures, addresses of registration and counties of residence of at least one-half of one percent of the total votes cast for the office of governor at the preceding general election."  *Id.*  The signatories must declare by their signatures "that they desire the party to be a qualified political party in New Mexico."  *Id.*  The deadline for filing the qualifying petitions is "the first Tuesday in April of the year in which the general election takes place."  NMSA 1978, § 1-7-4(A) (1969).  Before 1995, when the current April deadline was enacted into the Election Code, the deadline for filing qualifying petitions was the second Tuesday in July of a general election year.  1995 N.M. Laws Ch. 124, § 9.  Minor parties do not nominate their candidates in June primary elections in New Mexico.  They select their candidates at nominating conventions, which can be held as late as the month of July of a general election year.  NMSA 1978, § 1-8-2 (1969).  Minor parties and their candidates only appear on the November general election ballot.  *Id.*

In 2012, Plaintiff and the Green Party of New Mexico sought to place respective presidential and vice-presidential candidates on the New Mexico general election ballot in November 2012.  On March 29, 2012, five days before the deadline to file minor party qualifying

2

petitions, Plaintiffs, the Green Party of New Mexico, and Estevan Trujillo, a member of the Green Party of New Mexico, filed the Verified Complaint pursuant to 42 U.S.C. Section 1983.[2] Plaintiff seeks a declaration that the provision of the Election Code setting the April deadline for qualifying party petitions unlawfully restricts ballot access by violating the First and Fourteenth Amendments of the United States Constitution.[3] In addition, Plaintiff seeks a permanent injunction enjoining Defendant from enforcing the April deadline and ordering Defendant to accept qualifying minor party petitions until the first Tuesday in July 2012 and the first Tuesday in July of each subsequent general election year.

B. *Motion to Dismiss*

On November 30, 2012, Defendant filed her motion to dismiss the Verified Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the ballot access restrictions are constitutional. (Doc. 29). Specifically, Defendant asserts that any alleged harm imposed by the April deadline on minor parties, like the Constitutional Party, is outweighed by the State's interest in ensuring that a minor political party and its candidates demonstrate a sufficient modicum of support to justify a spot on the ballot. This interest, Defendant continues, is animated by a more general interest in avoiding voter confusion with an overcrowded ballot and ensuring

---

[2] On December 13, 2012, the parties filed a Stipulation of Dismissal, Without Prejudice, and of the Green Party of New Mexico and Estevan Trujillo. (Doc. 30). On that same day, the District Court entered an Order of Dismissal, Without Prejudice, of the Green Party of New Mexico and Estevan Trujillo. (Doc. 31). Thus, only the Constitution Party of New Mexico remains as Plaintiff in this proceeding.

[3] It should be noted here that Plaintiff has expressly declined to make any claim that the Election Code violates the Equal Protection Clause of the United States Constitution. Indeed, Plaintiff "reiterate[s] that plaintiff does not make *any claim* against any provision of the New Mexico Election Code **based on the Equal Protection Clause of the Fourteenth Amendment**." (Doc. 34) at 4-5.

participation in the political process. On December 17, 2012, Plaintiff filed its response to Defendant's Motion to Dismiss,[4] and on December 31, 2012, Defendant filed a reply. (Docs. 34 and 35).

C. *Standard of Review*

In reviewing a Rule 12(b)(6) motion asserting a failure to state a claim upon which relief can be granted, a Court must accept all well-pleaded allegations as true and must view them in a light most favorable to the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118 (1990). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need to include detailed factual allegations, but "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to the "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Courts must draw on

---

[4] The Court notes that the date Plaintiff filed its response is two days beyond the 14-day limit provided in D.N.M. LR-Cv Section 7.4(a), and also notes Defendant's objection to the untimely Response. The Response nevertheless is accepted for consideration. *See Dunford v. Young*, 166 F.3d 346, 1998 WL 850015 *1 (10th Cir. 1998) (applying discretionary standard when pleading filed beyond deadline for (1) actual prejudice, (2) interference with judicial process, and (3) culpability of litigant)).

their "judicial experience and common sense" to assess the plausibility of a claim. *Id.* at 679.

D. *Discussion*

Plaintiff claims that the April deadline set forth in the Election Code and the short time limit in which to gather signatures violates the First and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiff asserts that the April deadline places severe limits on Plaintiff's and other minor parties' abilities to qualify for a place on the ballot and, consequently, violates Section 1983 by infringing on the minor parties' rights to free speech guaranteed by both the First and Fourteenth Amendments. In support of this assertion, Plaintiff alleges in the Verified Complaint that the April deadline requirement that minor political parties gather signatures on their petitions so early, when the mind of the general public and the attention of the media is not focused on the general elections, is unduly burdensome. (Doc. 1) at ¶ 21. In addition, Plaintiff alleges that it is more difficult to recruit volunteers to collect petitions in the early months of the year when weather conditions are at times adverse. *Id*. at ¶ 22. Plaintiff further alleges that the April deadline greatly increases the costs that minor parties incur in order to collect the required number of signatures for their respective qualifying petitions. *Id*. at ¶ 23. Finally, Plaintiff alleges that the April deadline required it to hire outside consultants to assist local organizers to collect signatures. *Id*.

Both parties look to *Anderson v. Celebrezze* as the controlling framework governing whether a state election law violates the First and Fourteenth Amendments. 460 U.S. 780 (1983). In *Anderson*, the United States Supreme Court held that when a state election law is challenged on Constitutional grounds,

> a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the

>    asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is constitutional.

*Id*. Applying this framework, this Court determines that Plaintiff's claims overcome the Rule 12(b)(6) Motion to Dismiss by setting forth enough facts to state a facially plausible claim for relief.

Plaintiff challenges the early April deadline for minor party qualifying petitions by asserting multiple examples of how the timing of the deadline is burdensome to its First and Fourteenth Amendment rights. Specifically, Plaintiff alleges that the deadline "requir[es] political parties to gather signatures on their petitions so early, when the mind of the general public and the attention of the media is not focused on the general elections…." (Doc. 1) at ¶ 21. In striking down a March deadline to file nominating petitions for independent candidates, the Court in *Anderson* found this early deadline to be a significant factor, stating, "When the primary campaigns are far in the future and the election itself is even more remote, the obstacles facing an independent candidate's organizing efforts are compounded." 460 U.S. at 792. Similarly, the early April deadline in the Election Code is remote in time to the New Mexico June primaries and the November general election. Plaintiff alleges that as a direct result of this remoteness in time, it experienced difficulty in recruiting volunteers and generating voter interest. Plaintiff also alleges that the adverse weather in the months and weeks leading up to the early April deadline present burdens that make recruiting volunteers and collecting signatures difficult. As a result of the especially burdensome process presented by the April deadline, Plaintiff contends that it had

no choice but to expend scarce resources to hire outside consultants in order to meet the deadline. The fact that the deadline in the instant case is in early April is also significant in itself, because it imposes the very same burdens as those described in *Libertarian Party of Ohio v. Blackwell* which struck down a similar April deadline. 462 F.3d 579 (6th Cir. 2006). In doing so, the Sixth Circuit explained,

> Deadlines early in the election cycle require minor political supporters … when the major party candidates are not known and when the populace is not politically energized . . . . Early deadlines also have the effect of ensuring that any contentious issue raised in the same year as an election cannot be responded to by the formation of a new political party. The combination of these burdens impacts the party's ability to appear on the general election ballot, and thus, its opportunity to garner votes to win the right to govern.

*Id.* at 586.

Defendant asserts, on the other hand, that the minor ballot access restrictions do not violate the First and Fourteenth Amendments. First, Defendant correctly recites authority allowing states to condition access to a general election ballot by minor parties upon a showing of a "modicum of support among the potential voters for the office," i.e., to require sufficient signatures on qualifying petitions. (Doc. 29) at 9, n. 20 (quoting *Munro v. Socialist Workers Party et al.,* 479 U.S. 189, 193 (1986), which states "it is now clear that States may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." (internal citation omitted)). There apparently is no clear dispute on this point from Plaintiff. In fact, Plaintiff does not contest the Election Code's signature requirement. *See* (Doc. 34) at 4 . Rather, Plaintiff objects to the April deadline and the unlawful time constraints it imposes. Hence, Defendant's "modicum of support" discussion simply does not apply to this case.

Second, Defendant asserts, "The State has sufficient justification for the relatively light burden the challenged statutes place on Plaintiffs' rights." (Doc. 29) at 11. But Defendant stops there, offering no specific state interest served by the Election Code's early April deadline. Instead, Defendant posits only that the Election Code does not infringe on Plaintiff's constitutional rights, attempting only to diffuse Plaintiff's factual assertions in turn, ostensibly to establish the implausibility of each. *See Twombly*, 550 U.S. at 555 (dismissal proper when plaintiff fails to establish "enough facts to state a claim to relief that is plausible on its face"). But, as described above, this Court must accept all well-pled allegations as true and view them in a light that is most favorable to the Plaintiff. *See Zinermon*, 494 U.S. at 118. Doing so, the Court concludes that Plaintiff has pled enough facts in its Verified Complaint to show that (1) the April deadline is unduly burdensome to minor parties, like Plaintiff; and (2) the state has no precise interest to justify such an early deadline. Applying the *Anderson* balancing test to those alleged facts, the Court further concludes that Plaintiff has stated facially plausible First and Fourteenth Amendment claims in violation of Section 1983. Accordingly, the Court will deny the Motion to Dismiss.

IT IS ORDERED that Defendant Dianna J. Duran's Motion to Dismiss (Doc. 29) is denied.

_____
UNITED STATES DISTRICT JUDGE