IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE CONSTITUTION PARTY OF
NEW MEXICO,

  Plaintiff,

vs.            Civ. No. 1:12-325 KG/LFG

DIANNA J. DURAN, in her official capacity
as New Mexico Secretary of State,

  Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

On November 30, 2012, Plaintiff filed Plaintiff's Motion for Summary Judgment arguing

that it should prevail in this lawsuit.[1] (Doc. 26).  Defendant opposes the Motion for Summary

Judgment. (Doc. 32).  Plaintiff filed a reply to Defendant's opposition to the Motion for

Summary Judgment as well as a notice of additional authority. (Docs. 38 and 47).  Defendant

also filed a response to the notice of additional authority.  (Doc. 48).  Having reviewed the

Motion for Summary Judgment, the accompanying briefs, the notice of additional authority, and

the response to the notice of additional authority, the Court grants, in part, the Motion for

Summary Judgment. Accordingly, the Court will enter summary judgment in Plaintiff's favor on

its 42 U.S.C. Section 1983 claims and will enter a judgment declaring that NMSA 1978, Sections

1-7-2(A) and 1-7-4(A) (1969) violate the First and Fourteenth Amendments of the United States

Constitution to the extent that those Sections require minor political parties to file qualifying

petitions "no later than the first Tuesday in April before any election in which [a minor party] is

---

[1] Former Plaintiffs Green Party of New Mexico and Estevan Trujillo had joined in Plaintiff's
Motion for Summary, but they later withdrew from the case.  *See* (Doc. 31).

authorized to participate." The Court will also enter a permanent injunction enjoining Defendant

from enforcing Sections 1-7-2(A) and 1-7-4(A) to the extent that those Sections require minor

political parties to file qualifying petitions "no later than the first Tuesday in April before any

election in which [a minor party] is authorized to participate." The Court, however, will not, at

this time, grant Plaintiff's request to order Defendant to accept minor party qualifying petitions

until the first Tuesday in July of a general election year.[2]

A.  *Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[3] When

applying this standard, the Court examines the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics*

*Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party

bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come

forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc.*

*v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a

reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212

(10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by

---

[2] Although Plaintiff requests in the Verified Complaint for Injunctive and Declaratory Relief
(Verified Complaint) that the Court order Defendant to accept minor party qualifying petitions
until the first Tuesday in July of a general election year, Plaintiff asks in the memorandum
supporting Plaintiff's Motion for Summary Judgment that the Court order Defendant to accept
minor party qualifying petitions until the first Tuesday in August of a general election year.  *See*
(Doc. 1) at 7; (Doc. 27) at 18.  The Court will defer to the request for relief which Plaintiff
makes in the Verified Complaint.

[3] Rule 56 was amended effective December 1, 2010, but the standard for granting summary
judgment remains unchanged.

resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

B. *Background*

Plaintiff brings this election law case under Section 1983 for violations of the First and Fourteenth Amendments.  This lawsuit arises from the application of New Mexico election laws during the 2012 presidential election.  Plaintiff, a minor political party, must be qualified as a political party before Defendant will place Plaintiff's candidates on a New Mexico ballot.  To qualify as a political party, a minor party must file with Defendant a petition with signatures "of a least one-half of one percent of the total votes cast for the office of governor at the preceding general election who declare by their signatures on the petition that they are voters of New Mexico and that they desire the party to be a qualified political party in New Mexico."  NMSA 1978, § 1-7-2(A).  Section 1-7-2(A) refers to Section 1-7-4(A) for the time to file qualifying petitions.  Section 1-7-4(A) requires that filings be made "no later than the first Tuesday in April before any election in which it is authorized to participate."  Prior to 1995, the deadline for filing qualifying petitions was the second Tuesday in July of a general election year.  *See* 1995 N.M. Laws Ch. 124, § 9.

The Court takes judicial notice that the primary elections in New Mexico take place "on the first Tuesday after the first Monday in June of each even-numbered year."  NMSA 1978, § 1-8-11 (1969).  In addition, the general election takes place "on the Tuesday after the first Monday in November of each even-numbered year."  N.M. Const. art. XX, § 6.

Plaintiff alleges in the Verified Complaint that the April deadline "unconstitutionally impinge[s] on the associational rights of a minor politically [sic] party, its candidates, supporters and voters and freeze[s] the status quo in favor of the two dominant political parties in the state."

(Doc. 1) at ¶ 26.  Plaintiff also maintains that the April deadline is unduly burdensome and discriminatory to minor parties because it restricts Plaintiff's right "to place candidates on the ballot" and restricts Plaintiff's members from voting for the candidate of their choice.  *Id*. at ¶ 28. Plaintiff specifically alleges that "[r]equiring minor political parties to gather signatures on their petitions so early, when the mind of the general public and the attention of the media is not focused on the general elections, is unduly burdensome."  *Id*. at ¶ 21.  In addition, Plaintiff alleges that "[i]t is more difficult to recruit volunteers to collect petition signatures in the sometimes adverse weather of the early months of the year…."  *Id*. at ¶ 22. Plaintiff further contends that it has paid consultants "to come to New Mexico to consult with local organizers and assist the parties in collecting the requisite number of signatures by the early deadline."  *Id*. at ¶ 23.  Even with the assistance of consultants, Plaintiff maintains that it "may not be able to muster the required number of signatures on petitions by the early April deadline."  *Id*. at ¶ 24. Finally, Plaintiff alleges that Defendant lacks a compelling state interest in having an April deadline for minor parties seeking qualification as a political party.  *Id*. at ¶ 29.

Plaintiffs seeks a declaratory judgment that Sections 1-7-2(A) and 1-7-4(A) are unconstitutional, and asks the Court to temporarily and permanently enjoin Defendant from enforcing the April deadline.  *Id*. at 7.   Moreover, Plaintiff requests that the Court order Defendant to accept minor party qualification petitions until the first Tuesday in July of a general election year.  *Id*.

*C.  Plaintiff's Statement of Undisputed Material Facts*

Plaintiff filed a Statement of Undisputed Material Facts comprised of summaries from various affidavits.  The Statement of Undisputed Material Facts concerns Plaintiff as well as former Plaintiffs, the Green Party of New Mexico and Estevan Trujillo.  (Doc. 28).  Because the

Green Party of New Mexico and Trujillo are no longer parties to this lawsuit, the Court will consider only the statements regarding Plaintiff.  The Court notes that Defendant did not submit any of her own facts to counter Plaintiff's Statement of Undisputed Material Facts, but she contests several paragraphs in the Statement of Undisputed Material Facts.

First, Defendant contests Paragraphs 21, 22, 23, and 26 of the Statement of Undisputed Material Facts.  In Paragraph 21, Plaintiff contends that "[i]n the early part of a year of a presidential election, the mind of the general public and the attention of the media is not focused on the election, so it is more difficult for a minor party to recruit volunteers to gather signatures for minor party qualifying petitions by the early April deadline in New Mexico."  In Paragraph 22, Plaintiff states that "[o]ften minor parties attract additional supporters who supported major party candidates who lose in the June primaries and supporters who are disappointed with winning major party candidates."  In Paragraph 23, Plaintiff asserts that "[i]t is more difficult to recruit volunteers to collect qualifying petition signatures in the sometimes adverse weather of the early months of the year."  Finally, Plaintiff maintains in Paragraph 26 that "[a]fter a minor party has a nominated candidate, there is often a groundswell of support and an increase of party membership and volunteers."

Defendant argues that the Court should reject these paragraphs because they are broad, conclusory, and mere opinions without specific factual support. Defendant also argues that Paragraphs 22 and 23 are immaterial.  Plaintiff contends that Paragraphs 21, 22, 23, and 26 are supported by affidavits sworn to by witnesses experienced in these matters.  Plaintiff further contends that other courts have recognized the general observation made in Paragraph 21 and that other courts have found the statement in Paragraph 23 to be material.

The Tenth Circuit Court of Appeals has "long held that 'conclusory allegations without specific supporting facts have no probative value'" and cannot support summary judgment. *See, e.g., Ftizgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citation omitted). Even if Paragraphs 21, 22, 23, and 26 are material to the Motion for Summary Judgment and based on the opinions of experienced witnesses, the Court is troubled by the conclusory and even speculative nature of those paragraphs. Plaintiff's use of "often" or "more difficult" fail to convey the extent and severity of the situations presented in Paragraphs 21, 22, 23, and 26. Plaintiff simply does not present any specific facts to support the opinions reflected in those paragraphs. Moreover, the Court is reluctant to rely on general facts which other courts have found to be material. As a federal district court recently observed in a minor party ballot access case, "[r]eferences to previous cases, which conducted their own factual findings to unique election cycles and localities, are distinguishable at best and are most likely inapt to the current situation." *Stein v. Chapman*, 2012 WL 2935637 *8 (M.D. Ala. 2012). The Court will, therefore, disregard Paragraphs 21, 22, 23, and 26 in its analysis of the Motion for Summary Judgment. *See City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F.Supp.2d 1163, 1178 (D. Kan. 2008) (court gave no weight to defendant's "conclusory and self-serving" affidavit when deciding motion for summary judgment).

Next, Defendant argues that Paragraphs 29, 32-33, and 35 are immaterial. In Paragraph 29, Plaintiff states that it paid approximately $15,459 for the costs and services of two consultants to collect signatures prior to the April 2012 deadline. In Paragraphs 32-33, Plaintiff contends that it would have spent the money it paid to the consultants on various activities like media coverage and public relations. In Paragraph 35, Plaintiff concludes that the money paid to

6

the consultants and canvassers to collect signatures "severely" burdened Plaintiff's resources and Plaintiff's attempt to be a viable party in New Mexico.

Defendant contends that she did not require Plaintiff to spend any money on consultants and that Plaintiff exercised its discretion in spending over $15,000 on consultants. Plaintiff argues that these Paragraphs are material because the April 2012 deadline caused it to spend money on consultants which would have otherwise been spent on other activities. The Court agrees with Plaintiff that it is material that Plaintiff spent over $15,000 on consultants in order to meet the April 2012 deadline. However, it is immaterial what Plaintiff would have spent that money on. In addition, Paragraph 35 is an unsupported conclusory statement which does not deserve any weight. Consequently, the Court will consider Paragraph 29, but not Paragraphs 32-33 and 35.

Defendant also asserts that Paragraph 28 is immaterial because it refers to the June deadline for independent candidates to submit qualifying petitions which require more signatures than minor party qualifying petitions. Plaintiff notes that Paragraph 28 "demonstrates that Defendant can handle the administration of qualifying petitions much later within the election cycle without disrupting the election cycle and undercuts any claim that the deadline set by [the] NMSA 1978, § 1-7-4(A) deadline is narrowly tailored or even legitimate." (Doc. 38) at 7. The Court agrees with Plaintiff and will consider Paragraph 28.

Furthermore, Defendant contends that Paragraph 34 is not a fact. Plaintiff indicates in Paragraph 34 that it "had to neglect other states in which it wanted to develop a presence because it had to concentrate its efforts in New Mexico." Defendant argues that she did not require Plaintiff to concentrate its efforts in New Mexico, but rather Plaintiff chose to do so. Plaintiff contends that Paragraph 34 is based on a sworn statement made by Plaintiff's national chairman.

The issue in this case is what the effect of the April deadline has on Plaintiff's ability to access ballots in this state.  Whether efforts in New Mexico adversely affected Plaintiff's presence on ballots in other states is simply not material.  Hence, the Court will disregard Paragraph 34.

Finally, Defendant observes that Paragraph 19 is an incorrect statement of the law. Plaintiff states in Paragraph 19 that "[m]inor parties do not nominate their candidates in June primary elections in New Mexico.  They select their candidates at nominating conventions, which can be held as late as the month of July of the year of the general elections.  NMSA 1978 § 1-8-2."  Plaintiff does not object to Defendant's observation that Paragraph 19 is incorrectly stated.  Accordingly, the Court will disregard Paragraph 19 and directly refer to Section 1-8-2 when necessary.

Defendant does not object to Paragraphs 1-6, 12-18, and 20 which provide background information on Plaintiff and on New Mexico law regarding minor party qualifying petitions. Defendant also does not object to Paragraph 24 wherein Plaintiff states that it nominated its presidential and vice-presidential candidates at a convention in late April 2012.  Lastly, Defendant does not dispute Paragraph 31 which states:  "With a later deadline, it would have been easier for Plaintiff[] to collect the required amount of signatures on qualifying petitions using minor party volunteers."

D.  Discussion

   1.  Plaintiff's First and Fourteenth Amendment Claims

Plaintiff argues that it is entitled to summary judgment on its First and Fourteenth Amendment claims based on the balancing test articulated by the United States Supreme Court in *Anderson v. Celebreeze*, 460 U.S. 780 (1983).  Although *Anderson* involved an early qualifying petition deadline for independent candidates, courts have applied *Anderson* to cases addressing

8

the constitutionality of early qualifying petition deadlines for minor parties.  *See, e.g., Chapman*,

2012 WL 2935637 *2; *American Ass'n of People with Disabilities v. Herrera*, 690 F.Supp.2d

1183, 1195 (D.N.M. 2010) (use *Anderson*  test for inquiries "into the propriety of a state election

law…").   The Court in *Anderson* noted that when a state election law imposes only "reasonable,

nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the

State's important regulatory interests are generally sufficient to justify" the restrictions.

*Anderson*, 460 U.S. at 788.  The Court went on to hold that for a court to resolve a constitutional

challenge to a state's election law, a court

> must first consider the character and magnitude of the asserted injury to the rights
> protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It
> then must identify and evaluate the precise interests put forward by the State as
> justification for the burden imposed by its rule.  In passing judgment, the Court must not
> only determine the legitimacy and strength of each of those interests; it also must
> consider the extent to which those interests make it necessary to burden the plaintiff's
> rights.  Only after weighing all these factors is the reviewing court in a position to decide
> whether the challenged provision is unconstitutional.  The results of this evaluation will
> not be automatic; as we have recognized, there is "no substitute for the hard judgments
> that must be made."

*Id*. at 789-90 (internal citations omitted).

In 1992, the United States Supreme Court discussed *Anderson*  in *Burdick v. Takushi*, a

state election law case involving a ban on write-in voting in Hawaii.  504 U.S. 428 (1992).  The

Court explained that when First and Fourteenth Amendment "rights are subjected to 'severe'

restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling

importance.'"  504 U.S. 428, 433 (1992) (citing *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

The Court then applied the principles in  *Anderson*  and determined that the "ban on write-in

voting imposed[d] only a limited burden on voters' rights to make free choices and to associate

politically through the vote."  *Id*. at 438-39.  The Court stated that because they "concluded that

the burden is slight, the State need not establish a compelling interest to tip the constitutional

scales in its direction.  Here, the State's interests outweigh petitioner's limited interest in waiting until the eleventh hour to choose his preferred candidate."  *Id*. at 439.  The Court concluded that "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights—as do Hawaii's election laws—a prohibition on write-in voting will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme."  *Id*. at 441.

In 2008, the United States Supreme Court in *Crawford v. Marion County Election Bd.* confirmed that *Burdick* did not "identify any litmus test for measuring the severity of a burden that a state law imposes on a political party, an individual voter, or a discrete class of voters. However slight that burden may appear, … it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'"  553 U.S. 181, 191 (2008) (quoting *Norman*, 502 U.S. at 288-89).  Moreover, the Court emphasized that "[t]he *Burdick* opinion was explicit in its endorsement and adherence to *Anderson*" and "did not create a novel 'differential important regulatory interests standard.'"  *Id*. at 190 n.8 (citations and internal quotation marks omitted).

The first step in applying the *Anderson* test is to determine the character and magnitude of Plaintiff's asserted injury.  Plaintiff notes that other courts have determined that early deadlines, similar to the one in this case, for filing minor party qualifying petitions impose severe burdens on minor parties.  While that may be true, courts must apply the *Anderson* test on a case-by-case basis.  *See Constitution Party of Kansas v. Kobach*, 695 F.3d 1140, 1144 (10th Cir. 2012).  *See also Nader v. Blackwell*, 545 F.3d 459, 475 (6th Cir. 2008) ("a particularized assessment of the restriction and the burden it imposes is required."); *Chapman*, 2012 WL

2935637 *7 (*Anderson* test requires examination of "present conditions" which "particular parties" face in the jurisdiction at issue).  Consequently, the Court will not rely on the cases cited by Plaintiff to decide Plaintiff's Motion for Summary Judgment.

Defendant contends that to determine the extent of the injury caused by the April deadline the Court must look at the number of signatures required to be on the qualifying petition as well as the time period to collect those signatures.  Defendant cites five cases which discuss whether the number of required signatures injures or burdens a minor party:  *Williams v. Rhodes*, 393 U.S. 23 (1968); *Green Party of Tennessee v. Hargett*, 882 F.Supp.2d 959 (M.D. Tenn.), *reversed on other grounds*, 700 F.3d 816 (6th Cir. 2012); *Kelly v. McCulloch*, 2012 WL 1945423; *New Alliance Party of Alabama v. Hand*, 933 F.2d 1568 (11th Cir. 1991); and *McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980).  These cases, however, do not mandate that the number of signatures be considered in determining the constitutionality of an early filing deadline for minor party qualifying petitions.  Moreover, in *Williams*, *Hargett*, *Kelly*, and *McLain*, the plaintiffs, unlike Plaintiff here, specifically challenged the signature numerosity requirement of their state election laws.  Additionally, the court in *New Alliance Party* did not even consider the state's signature numerosity requirement in deciding that an early deadline for filing minor party qualifying petitions and candidate nomination certifications was unconstiututional.  In fact, the court in *Hargett* decided that the deadline challenge alone unduly burdened the plaintiffs' First Amendment rights.  882 F.Supp.2d at 1013.  Also, as Plaintiff correctly indicates, the Court in *Anderson* decided a challenge to an early qualifying petition deadline for independent candidates without considering the numerosity of signatures.  No legal authority mandates that the Court consider the numerosity of signatures in deciding the character and magnitude of any injury caused by the April deadline.

Next, Defendant distinguishes cases Plaintiff cites, including *Anderson*, which concern qualifying petition deadlines for independent candidates.  Defendant argues that "the burden imposed on an independent candidate is different in kind from that imposed on a party merely seeking qualification."  (Doc. 32) at 8.  Courts, however, have not made that distinction.  As noted previously, courts have applied the *Anderson* test to cases involving qualifying petition deadlines for minor parties.  *See, e.g., California Justice Committee v. Bowen*, 2012 WL 5057625 (C.D. Cal.).

Defendant also argues that since there is no restriction on when Plaintiff can begin collecting signatures, the April deadline does not impose a "time pressure" on Plaintiff.  *See* (Doc. 32) at 9.  Defendant cites two cases in which courts considered the lack of a beginning date for collecting signatures as factors in concluding that early qualifying petition deadlines for minor parties are constitutional.  In *North Carolina Constitution Party v. Bartlett*, the plaintiffs argued that both the signature numerosity requirement and the early deadline for filing minor party qualifying petitions were unconstitutional. 2013 WL 785353 (W.D.N.C.) (slip copy).  The court, however, found that the early deadline was immaterial and that the analysis should be directed to the burden associated with collecting signatures.  *Id*. at *6.  Consequently, the court found that the burden of collecting signatures was lessened significantly by six different factors including that there was "no time limit on the time period in which signatures could be gathered…."  *Id*.  *Bartlett*, however, is not particularly helpful here because (1) the *Bartlett* court did not directly address the deadline issue presented in this case; and (2) the lack of a beginning date to collect signatures was only one of six determining factors.

In *Stein v. Bennett*, the second case cited by Defendant, the court discussed, among other facts, how the plaintiffs could have collected signatures earlier in order to meet the Alabama

deadline for minor party qualifying petitions.  2013 U.S. Dist. Lexis 126667 *22-23 (M.D. Ala.).

The court, however, stated that it could not "affirmatively conclude that Alabama's election law

imposes minor burdens on Plaintiffs' rights; it finds only that Plaintiffs (who would bear the

burden of proof at trial) have failed to prove otherwise."  *Id*. at *27. Moreover, the court noted

that because the Alabama deadline for minor party qualifying petitions is the date of the primary

election, the Alabama election law does not discriminate against minor parties, unlike cases,

similar to this one, where ballot access deadlines are well before the primaries and subject to

constitutional scrutiny.  *Id*. at *14-15. Although *Bennett* appears persuasive at first glance, the

court did not actually conclude that the Alabama election law does not burden minor parties.

Additionally, *Bennett* is distinguishable from this case on the facts.  Accordingly, *Bennett*, an

unpublished district court case from another district, simply carries little weight.

      Even assuming Plaintiff could meet the April deadline if it starts collecting signatures

earlier in the year, that fact alone does not necessarily mean that the April deadline does not

burden Plaintiff.  "The fact that an election procedure can be met does not mean the burden

imposed is not severe."  *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 592 (6th Cir.

2006)).  The Court, therefore, rejects Defendant's argument that if Plaintiff starts collecting

signatures earlier in the year, the April deadline must not be burdensome to minor parties like

Plaintiff.

      Finally, Defendant cites *Rainbow Coalition of Oklahoma v. Oklahoma State Election Bd*.

to support its assertion that the April deadline imposes at most a *de minimus* burden on Plaintiff.

844 F.2d 740 (10th Cir. 1988).  Plaintiffs in *Rainbow Coalition* argued that an early deadline for

filing minor party qualifying petitions combined with a high signature requirement made

Oklahoma's ballot access law "one of the most restrictive in the country."  *Id.* at 744.  The Tenth

Circuit held that the early deadline was constitutional, "even in conjunction with the relatively high signature requirement." *Id*. at 747.

  *Rainbow Coalition*, however, is easily distinguished from this case. First, the Tenth Circuit in *Rainbow Coalition* differentiated *Anderson* on the deadline issue by noting that the United States Supreme Court in *Anderson* decided that case with respect to a qualifying petition deadline for independent candidates in the context of a presidential election year while *Rainbow Coalition* did not involve Oklahoma's much more lenient ballot access law for presidential minority candidates. *Id*. at 746 n.9. This case, on the other hand, arose from the 2012 presidential election. As the Court stated in *Anderson*, "the State has a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." 460 U.S. at 795. Moreover, as stated previously, subsequent caselaw indicates that *Anderson* should also apply to deadlines for qualifying minor party petitions. Second, unlike this case, Oklahoma law required the parties in *Rainbow Coalition* to select their candidates during the primary election. Consequently, the state needed an early deadline for minor party qualifying petitions so it could verify the petitions before the primary candidate filing deadline, and the state needed sufficient time between the primary candidate filing deadline and the primary election to process challenges to the candidates as well as "to print ballots, and to mail out and receive absentee ballots." 844 F.2d at 745. Since Plaintiff selected its 2012 candidates during the late April convention, prior to the June primary, the state's concerns in *Rainbow Coalition* do not apply

here.[4]  Finally, *Rainbow Coalition* does not control the outcome of this case, because the Court must examine the particular facts of this case in applying the *Anderson* test.

The Court now turns to the undisputed material facts of this case to determine the character and magnitude of the injury caused by the April deadline.  The Court finds that but for the April deadline, Plaintiff would not have paid consultants over $15,000 to complete the qualifying petition.  Although Defendant claims that Plaintiff could have obtained the signatures for the qualifying petition without consultants if it had started collecting signatures earlier in the year, the parties agree that "[w]ith a later deadline, it would have been easier for Plaintiff[] to collect the required amount of signatures on qualifying petitions using minor party volunteers" at a, presumably, significant savings to Plaintiff.  (Doc. 28) at ¶ 31. The expenditure of money to hire consultants is at least a substantial, if not a severe, burden on Plaintiff resulting from the April deadline.  *See Crawford*, 504 U.S. at 205 (Scalia, J., concurring) ("Burdens are severe if they go beyond the merely inconvenient.").

Defendant argues, however, that the state's interests outweigh any burden which the April deadline might impose on Plaintiff.  Specifically, Defendant claims that:

---

[4] Plaintiff notes that the Tenth Circuit has commented that early deadlines for qualifying minor party petitions appear "to run counter to views" in United States Supreme Court cases, like *Anderson*, "which would permit independent political parties to organize after the conventions of the major parties have chosen their tickets and platforms."  *Populist Party v. Herschler*, 746 F.2d 656, 661 (10th Cir. 1984).  That reasoning certainly would have been relevant to the 2012 election year in which Plaintiff held its nominating convention in late April 2012, prior to the primary and the major parties' conventions. *See* (Doc. 28) at ¶ 24. However, Plaintiff could conceivably hold any future conventions as late as July in the year of the general election.  *See* NMSA 1978, § 1-8-2(B) (1969) ("names [of minor party candidates] certified to the secretary of state shall be filed on the twenty-first day following the [June] primary election in the year of the general election…."). *See also Woodruff v. Hererra*, 623 F.3d 1103 (10th Cir. 2010) (other portions of Section 1-8-2 found unconstitutional.).

> [t]he State has a strong interest in conducting an orderly election.  One of the keys
> to the orderly conduct of an election is a manageable ballot.  This means that a State may
> require that a party show a modicum of support before giving that party ballot access.

(Doc. 32) at 10.  This assertion of a state interest is woefully inadequate for several reasons.

First, it lacks any factual basis, is merely conclusory, and lacks specificity.  Accordingly, the

April deadline appears arbitrary and does not advance any precise state interest.  Second, the fact

that Defendant does not present any evidence that the previous July deadline caused problems in

the orderly conduct of elections supports a conclusion that the purpose of the April deadline is to

discriminate against minor parties.  As Plaintiff observes, Defendant is capable of processing

independent candidate qualifying petitions without any difficulty "as late as three weeks after the

June primary in New Mexico."  (Doc. 28) at ¶ 28.  Finally, a challenge to a filing deadline does

not affect the requirement that a party show a modicum of support by collecting the required

number of signatures on its qualifying petition.  In fact, Plaintiff does not challenge the signature

numerosity requirement imposed by the State of New Mexico.  In sum, the April deadline is

unreasonable and discriminates against minor parties.  Consequently, the state has no relevant or

legitimate interest "sufficiently weighty" to justify the April deadline.

Balancing the injury caused by the April deadline, whether that injury is characterized as

merely substantial or as severe, against the state's lack of a precise interest in the April deadline,

the Court concludes that the April deadline violates Plaintiff's First and Fourteenth Amendment

rights as a matter of law.  Plaintiff is, therefore, entitled to summary judgment on its Section

1983 claims.

### 2.  Requested Relief

Since Plaintiff prevails on its Motion for Summary Judgment, the Court will enter a

judgment declaring that Sections 1-7-2(A) and 1-7-4(A) violate the First and Fourteenth

Amendments to the extent that those Sections require minor political parties to file qualifying petitions "no later than the first Tuesday in April before any election in which [a minor party] is authorized to participate."  Although Plaintiff originally sought both temporary and permanent injunctive relief, it is appropriate to consider only the request for permanent injunctive relief, because the 2012 presidential election has already occurred.  For the Court to enter an order granting the permanent injunctive relief Plaintiff seeks, Plaintiff must prove "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."  *See Southwest Stainless, LP v. Sappington,* 582 F.3d 1176, 1191 (10th Cir. 2009).   The Court concludes that Plaintiff has proven these elements with respect to its request for a permanent injunction enjoining Defendant from enforcing the April deadline.  Hence, the Court will permanently enjoin Defendant from enforcing Sections 1-7-2(A) and 1-7-4(A) to the extent that those Sections require minor political parties to file qualifying petitions "no later than the first Tuesday in April before any election in which [a minor party] is authorized to participate."

It is improper, however, for the Court to order, at this time, injunctive relief which mandates Defendant to accept minor party qualifying petitions until the first Tuesday in July of a general election year. A proper regard for federal-state relations requires that this Court allow the state legislature an opportunity to enact a lawful deadline for minor parties to file qualifying petitions.  *See, e.g. Maryland Citizens for a Representative General Assembly v. Governor of Md.*, 429 F.2d 606, 609 (4th Cir. 1970) (allow state legislature to address constitutionally defective law unless state legislature had opportunity to cure defective law and did not do so); *Hellebust v. Brownback*, 884 F.Supp.436,438 (D. Kan. 1995) ("In the event the legislature does

17

not enact a new statutory scheme that comports with the Constitution of the United States, it appears appropriate for this court to order a permanent injunction."); *Blomquist v. Thomson*, 591 F.Supp. 768, 777 (D. Wyo. 1984) ("In the interest of harmonious federal-state relations, the Court will defer any ruling upon the remedial aspects of this action until the Wyoming Legislature has had an opportunity in that session to amend the Wyoming Election Code in light of the provisions of this order.").  Accordingly, the Court denies, at this time, Plaintiff's request for an order requiring Defendant to change the April deadline to a July deadline.

IT IS ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 26) is granted, in part, in that

1.  summary judgment will be entered in Plaintiff's favor on its Section 1983 claims;

2.  a judgment will be entered declaring that NMSA 1978, Sections 1-7-2(A) and 1-7-4(A) violate the First and Fourteenth Amendments to the extent that those Sections require minor political parties to file qualifying petitions "no later than the first Tuesday in April before any election in which [a minor party] is authorized to participate;"

3.  Defendant will be permanently enjoined from enforcing NMSA 1978, Sections 1-7-2(A) and 1-7-4(A) to the extent that those Sections require minor political parties to file qualifying petitions "no later than the first Tuesday in April before any election in which [a minor party] is authorized to participate;" and

4.  Plaintiff's request for an order requiring Defendant to change the April deadline for minor parties to file qualifying petitions to a July deadline is denied at this time.

_____
UNITED STATES DISTRICT JUDGE